Lopez Canas v. Barr

BIA
Ruehle, IJ
A098 589 755

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 9th day of October, two thousand nineteen.

PRESENT:
> PIERRE N. LEVAL,
> DEBRA ANN LIVINGSTON,
> RAYMOND J. LOHIER, JR.,
> *Circuit Judges.*

_____

JOSE HENRY LOPEZ CANAS,
> *Petitioner,*

> v.                                          19-634

WILLIAM P. BARR, UNITED STATES
ATTORNEY GENERAL,
> *Respondent.*

_____

FOR PETITIONER:          ROBERT F. GRAZIANO, Law Office of
                         Robert F. Graziano, Buffalo, NY.

FOR RESPONDENT:          LINDSAY CORLISS (Joseph H. Hunt;
                         Brianne Whelan Cohen, *on the brief*),
                         Office of Immigration Litigation,
                         United States Department of Justice,
                         Washington, DC.

UPON DUE CONSIDERATION of this petition for review of a Board of Immigration Appeals ("BIA") decision, it is hereby ORDERED, ADJUDGED, AND DECREED that the petition for review is DENIED.

Petitioner Jose Henry Lopez Canas, a native and citizen of El Salvador, seeks review of a March 4, 2019, decision of the BIA affirming an August 29, 2018, decision of an Immigration Judge ("IJ") denying Lopez Canas's application for withholding of removal and relief under the Convention Against Torture ("CAT"). *In re Jose Henry Lopez Canas,* No. A 098 589 755 (B.I.A. Mar. 4, 2019), *aff'g* No. A 098 589 755 (Immig. Ct. N.Y. City Aug. 29, 2018). We assume the parties' familiarity with the underlying facts and procedural history in this case.

Under the circumstances of this case, we have reviewed the IJ's decision as modified by the BIA. *See Xue Hong Yang v. U.S. Dep't of Justice*, 426 F.3d 520, 522 (2d Cir. 2005). Because the BIA assumed credibility, we assume credibility as to past events and Lopez Canas's subjective fear of future harm. *See Yan Chen v. Gonzales*, 417 F.3d 268, 271–72 (2d Cir. 2005). We review the agency's factual findings for substantial evidence and its legal conclusions *de novo*. *See* 8 U.S.C. § 1252(b)(4)(B); *Paloka v. Holder*, 762 F.3d 191, 195 (2d Cir. 2014) ("Courts review *de novo* the legal determination of whether a group constitutes a 'particular social group' . . . ."); *Yanqin Weng v. Holder*, 562

2

F.3d 510, 513, 516 (2d Cir. 2009) (reviewing denial of CAT protection under the substantial evidence standard).

Withholding of Removal

To demonstrate eligibility for withholding of removal, an "applicant must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for" the claimed persecution. 8 U.S.C. § 1158(b)(1)(B)(i); *id.* § 1231(b)(3)(A); *Matter of C-T-L-*, 25 I. & N. Dec. 341, 346 (BIA 2010) (holding that the "one central reason" standard also applies to withholding of removal). To constitute a particular social group, a group must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I. & N. Dec. 227, 237 (BIA 2014); *see Paloka*, 762 F.3d at 195–97. "To be socially distinct, a group . . . must be perceived as a group by society." *Matter of M-E-V-G-*, 26 I. & N. Dec. at 240.

The agency did not err in rejecting Lopez Canas's proposed social group of former bus drivers in El Salvador because there was a lack of evidence that Salvadoran society recognizes former bus drivers as a distinct group. *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 240 ("Social distinction refers to social recognition"). "Evidence such as country conditions reports, expert witness

3

testimony, and press accounts of discriminatory laws and policies, historical animosities, and the like may establish that a group exists and is perceived as 'distinct' or 'other' in a particular society." *Id*. at 244. Here, the country conditions evidence reflects that gangs have targeted bus drivers for extortion, and one article reports that between 2005 and 2014, 800 transport employees were killed. But "a group's recognition . . . is determined by the perception of the society in question, rather than by the perception of the persecutor." *Id.* at 242. And there is no evidence that society generally—or gang members in particular—recognizes *former* bus drivers as a distinct social group. *See id.* at 240. Lopez Canas testified that his friends and bus dispatchers would know that he had been a bus driver, but the recognition of friends and former coworkers is not an appropriate proxy for the perception of society as a whole. *See Matter of W-G-R-*, 26 I. & N. Dec. 208, 217 (BIA 2014) ("[T]here must be evidence showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group.").

The agency also did not err in rejecting Lopez Canas's proposed social group of "persons who return from the United States to El Salvador who are presumed to have some wealth" because it did not satisfy the social distinction requirement. *See Matter*

4

*of M-E-V-G-*, 26 I. & N. Dec. at 240. Lopez Canas did not submit any country conditions evidence, or cite to any evidence in his brief, to demonstrate that people returning from the United States are perceived as a distinct group by Salvadoran society. *See* 8 U.S.C. § 1229a(c)(4) (providing that an "alien applying for relief or protection from removal has the burden of proof"); 8 C.F.R. § 1208.16(b) (providing that the "burden of proof is on the applicant for withholding of removal"); *Matter of M-E-V-G-*, 26 I. & N. Dec. at 244. Lopez Canas argues that "this particular social group is of the kind that is recognized practically everywhere," but counsel's assertion is insufficient to show social distinction. *See Matter of M-E-V-G-*, 26 I. & N. Dec. at 244; *see also Pretzantzin v. Holder*, 736 F.3d 641, 651 (2d Cir. 2013) (noting that arguments of counsel cannot substitute for evidence of the theory asserted).

Furthermore, we have previously affirmed the BIA's rejection of the affluent as a particular social group in Guatemala, finding that, "[w]hen the harm visited upon members of a group is attributable to the incentives presented to ordinary criminals rather than to persecution, the scales are tipped away from considering those people a 'particular social group' within the meaning of the [Immigration and Nationality Act]." *Ucelo-Gomez v. Mukasey*, 509 F.3d 70, 73 (2d Cir. 2007). Accordingly, Lopez

5

Canas has not sufficiently demonstrated that his prospective status as a potentially wealthy person who has been to the United States constitutes membership in a distinct social group. *See id.*

Because Lopez Canas did not establish membership in a cognizable social group, the agency did not err in denying withholding of removal. *See* 8 U.S.C. § 1231(b)(3)(A).

CAT

An applicant for CAT relief has the burden to show that "it is more likely than not" that he will be tortured, but he need not show any connection to a protected ground. *See* 8 C.F.R. § 1208.16(c)(2); *Khouzam v. Ashcroft*, 361 F.3d 161, 168 (2d Cir. 2004). To constitute torture under the CAT, the likely harm must be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity." *Id*. § 1208.18(a)(7). Cognizable acquiescence "requires only that government officials know of or remain willfully blind to an act and thereafter breach their legal responsibility to prevent it." *Khouzam*, 361 F.3d at 171.

6

The agency did not err in concluding that Lopez Canas failed to show that Salvadoran authorities would more likely than not acquiesce to his torture by gangs. Lopez Canas testified that he believed that gang members and the police were connected, but the record contains minimal evidence suggesting that Lopez Canas would be tortured, or that government officials would acquiesce to his torture. Lopez Canas testified that he reported incidents in which gangs harmed him while he was employed as a bus driver in 1999 and 2001, in response to one of which a police officer said, "that's why they're out killing you guys because you're all complaining all the time." Additionally, when he was asked if he had any knowledge of connections between the police and the gangs, he testified that, "when I filed the complaint when I was beaten, that was when I felt that I was being harassed and followed the most." The agency was not required to find his testimony sufficient to show that there was collusion between gang members and the police resulting in official acquiescence to torture.[1] *See Siewe v. Gonzales*, 480 F.3d 160, 167 (2d Cir. 2007) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." (internal

---

[1] Lopez Canas also testified as to a 2009 incident in which he was extorted and shot by gang members, but said that he did not report the incident to the police. He therefore cannot establish that the Salvadoran police knew about, or were willfully blind to, this extortion and shooting. *See Khouzam*, 361 F.3d at 171 (requiring knowledge of or willful blindness to torture).

7

quotation marks omitted)).  Moreover, the fact that the police did not take action to address his complaints besides taking a report is not sufficient on its own to show government acquiescence to torture.  *See Garcia-Milian v. Holder*, 755 F.3d 1026, 1034 (9th Cir. 2014) ("Evidence that the police were aware of a particular crime, but failed to bring the perpetrators to justice, is not in itself sufficient to establish acquiescence in the crime."); *Mu-Xing Wang v. Ashcroft*, 320 F.3d 130, 144 & n.21 (2d Cir. 2003) (suggesting that evidence of pervasive human rights violations is insufficient to show that a particular CAT applicant is more likely than not to be tortured, with or without official assent).

There is also minimal country conditions evidence to support Lopez Canas's assertion that police officers would acquiesce to his torture.  Lopez Canas does not cite to any evidence besides the 2017 State Department Report, which lists "instances of corruption and other crimes" among several factors that "limited the [police]'s effectiveness" and states that one of the most significant human rights problems was "widespread government corruption."  The report does not discuss, however, whether the reported police corruption involved colluding with gang members, supporting gang activities, or acquiescing to torture.  The specific incidents of government corruption described in the report largely concern elected officials, including former

8

presidents and a former attorney general. And on the whole, the country conditions evidence does not otherwise describe ties between gangs and the police that suggest a probability that Lopez Canas will be tortured with official assent. Indeed, even if Lopez Canas's evidence were sufficient to demonstrate substantial collusion between gang members and the police, this would be insufficient to show that the police would acquiesce to harm to Lopez Canas specifically. *See Wang*, 320 F.3d at 144 (2d Cir. 2003) (explaining that an applicant for CAT relief must show a likelihood of torture in "his particular alleged circumstances").

Based on the limited evidence of collusion between gang members and the police, and the lack of particularized evidence that government officials would acquiesce to Lopez Canas's torture specifically, the evidence does not compel a finding that Lopez Canas will more likely than not be tortured by or with the acquiescence of the Salvadoran authorities. *See* 8 U.S.C. § 1252(b)(4)(B) ("[T]he administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary[.]"); *Wang*, 320 F.3d at 144. As such, the agency did not err in denying the requested CAT protection. *See* 8 C.F.R. § 1208.18(a)(1).

9

For the foregoing reasons, the petition for review is DENIED. As we have completed our review, the stay of removal that the Court previously granted in this petition is VACATED.

                              FOR THE COURT:
                              Catherine O'Hagan Wolfe, Clerk